FILED
2008 Apr-23  PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENDA JAEGER-WAYBOER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:06-CV-2246-IPJ |
| | ) | |
| STUART DAVIDSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the court is the defendant's Motion for Summary Judgment (doc. 41).  The defendant's motion is supported by a brief and evidentiary materials (doc. 42 & attachments 1-14 to doc. 42).  The plaintiff filed a response which is also supported by evidentiary materials (doc. 48 & attachments 1-15 to doc. 48).  The defendant filed a reply to the plaintiff's response (doc. 58).

In addition, there are a number of pending motions concerning the parties' summary judgment submissions (docs. 45, 47, 51, 59, 61, 62, 64).

Upon consideration of all of the parties' motions, evidentiary submissions, and written arguments, the court concludes that the defendant's Motion for Summary Judgment is due to be **GRANTED** on all counts as set out below.  As

1

the court has considered all the filings by the parties regarding the defendant's Motion for Summary Judgment, the remaining motions are found **MOOT**. Accordingly, the pretrial conference at which the defendant's summary judgment motion was to be argued is **CANCELED**.

## Statement of Facts

The plaintiff's claims arise out of injuries suffered by the plaintiff while she was incarcerated at the Pelham City Jail on October 24, 2004 (doc. 1; doc. 16). The plaintiff and her teenage daughter were both arrested that morning for domestic violence following an argument and physical altercation.  Jaeger-Wayboer dep. at 54-63.[1]  The plaintiff was taken to the Pelham City Jail where she was placed in a cell with another woman.  *Id*. at 64.  The cell in which the plaintiff was placed had a bunk bed.  *Id.* at 66.  The other woman in the cell, Angela Denise Reese, was already in the bottom bunk.  *Id.* at 68; doc. 36.  There was no ladder for the top bunk so the plaintiff attempted to climb into the top bunk by stepping onto the bottom bunk.  Jaeger-Wayboer dep. at 68.  The plaintiff was unable to climb into the top bunk on her own so Ms. Reese assisted her by pushing her into the top bunk.  *Id.* at 69-70.

---

[1]Mrs. Jaeger-Wayboer was deposed two times in this case.  All citations are to the first deposition unless stated otherwise.

At some point, the plaintiff decided to get down from the top bunk in order to go to the bathroom. *Id.* at 70, 78-79. Since there was no ladder, the plaintiff attempted to get down by sliding on her stomach. *Id.* at 70. As the plaintiff slid down the bed, she lost her grip and fell to the ground. *Id.* at 70-71. The plaintiff's head struck the wall opposite the bunk bed as she fell. *Id.* at 71. The plaintiff's shoulder and arm then struck the ground as she tried to brace herself. *Id.* at 71-72. The plaintiff's legs never hit the ground because they were tangled up in the bottom bunk bed. *Id.* at 71-72, 74. The plaintiff's fall caused her pain in the inside of her right leg, the upper part of her back, her right arm and her head. *Id.* at 74-75. The plaintiff does not believe that she ever lost consciousness, but she does remember seeing white flashes while she was laying on the ground. *Id.* at 72, 75-76. The plaintiff was unable to get herself up off the ground so she began to call out for help. *Id.* at 76.

Mike Wilkinson was the dispatcher on duty at the time of the plaintiff's fall who was responsible for watching the surveillance cameras at the Pelham City Jail. Wilkinson aff. at ¶ 2. At some point after 1:30 P.M., Wilkinson observed the plaintiff on the monitor lying on the floor in her cell. *Id.* at ¶ 4. Due to the fact that the video was on a time lapse feed, Wilkinson could not determine why the plaintiff was on the floor. *Id.* Wilkinson called Officer Scott Davidson, who was

the supervisor on duty at the time, to check on the plaintiff. *Id.* at ¶ 5.

When Officer Davidson arrived at the plaintiff's cell he found a woman, who he would later learn was the plaintiff, lying on the ground. Davidson dep. at 47. According to the plaintiff, when Officer Davidson arrived at her cell he yelled at her from outside the cell to "get up." Jaeger-Wayboer dep. at 79-80. The plaintiff did not respond so Officer Davidson secured his gun in the firearms locker and retrieved a key to the plaintiff's cell. Davidson dep. at 49-50. When Davidson opened the cell door he again called to the plaintiff and again he received no response. *Id.* at 56-57. The plaintiff testified that Officer Davidson told her to "get up" and said "something about being fat" and "[t]here is nothing wrong with you." Jaeger-Wayboer dep. at 81-82.

The plaintiff claims that Officer Davidson then started kicking her in the left side between her hip bone and her rib cage.[2] Jaeger-Wayboer dep. at 82-83. The plaintiff testified that she could not recall the precise number of times that Officer Davidson kicked her. *Id.* at 82. However, she stated that it was less than ten times. *Id.*

---

[2]In her second deposition the plaintiff testified that Officer Davidson kicked her on her right side. Jaeger-Wayboer dep. # 2 at 6. Upon further questioning, she again testified "He kicked me on my right side." *Id.* at 8. The plaintiff eventually corrected herself during questioning by her own attorney. *Id.* at 31.

4

For his part, Officer Davidson does not deny contacting the plaintiff's left side with his foot.  Davidson dep. at 58.  However, Officer Davidson disputes the plaintiff's assertion that he kicked her multiple times.  *Id*.  Officer Davidson claims that he was attempting to make contact with the plaintiff while maintaining as much distance from her as possible.  *Id.* at 57-58.  Officer Davidson claims that he nudged the plaintiff with his foot three times while calling out to her.  *Id.* at 58.  When the plaintiff finally responded she told Officer Davidson: "Can't you see that I'm hurt?"  *Id.* at 63.  In addition, she stated that she had a bad back and she had hurt it again and that she intended to sue Officer Davidson.  *Id*.

Following the encounter with Officer Davidson, the plaintiff's injuries were treated by paramedics at the jail.  Massey aff. at ¶ 2; Reid aff. at ¶ 2; Zekoff aff. at ¶ 2.  The plaintiff reported to the paramedics that she fell off a bunk bed and hurt her back.   Massey aff. at ¶ 3; Reid aff. at ¶ 3; Zekoff aff. at ¶ 3.  The plaintiff did not tell the paramedics that she was kicked by a police officer.  Massey aff. at ¶ 3; Reid aff. at ¶ 3; Zekoff aff. at ¶ 3.

The plaintiff was accompanied to the hospital by Officer Ewing Fuller.  Fuller aff. at ¶ 2.  Fuller states that at no time during his interaction with the plaintiff did she mention being kicked by an officer.  *Id.* at ¶ 3.

At the hospital the plaintiff was treated by Marshea Zito, a registered nurse,

and Dr. Everitt Simmons.  Simmons aff. at ¶ 2; Zito aff. at ¶ 2.  The plaintiff told Zito that she injured herself falling off a bunk bed.  Zito aff. at ¶ 3.  According to Zito, the plaintiff's chief complaint was tenderness in her neck and right ankle.  *Id.* at ¶ 3.  Zito's examination did not reveal any tenderness on the plaintiff's left side. *Id.* at ¶ 4.  Zito has no recollection and she made no note of the plaintiff stating that she was kicked by a police officer.  Zito aff. at ¶ 3.  Dr. Simmons' recollection is similar.  He states that plaintiff told him that she fell off a bed and that her primary complaints were of pain in her head, neck, chest, abdomen, and upper back.  Simmons aff. at ¶ 3.  Dr. Simmons' examination of the plaintiff did not reveal any bruises on the plaintiff's left side between her hip and rib cage.  *Id.* at ¶ 4.  Dr. Simmons diagnosed the plaintiff with a back contusion and neck and lumbar strains caused by falling out of the bed.  *Id.* at ¶ 6.

After the plaintiff was released from jail she received treatment for her injuries from Dr. Vicki Moore on October 27, 2004.  Moore aff. at ¶ 5.  The plaintiff told Dr. Moore that she injured herself falling out of a bunk bed.  *Id.*  Dr. Moore does not recall and she made no notation of being told by the plaintiff that she was kicked by a police officer.  *Id.*  Dr. Moore's examination revealed bruises on the plaintiff's inner right thigh, as well as a bite mark on her right shoulder.  *Id.* at ¶ 6.  Dr. Moore's examination did not reveal any bruises on the plaintiff's left

6

hip area. *Id.* Dr. Moore did note that the plaintiff was tender on her left thoracic back (upper back), side, and over her breast, as well as on her right knee and ankle. *Id.* Dr. Moore examined the plaintiff for a second time on November 11, 2004. *Id.* at ¶ 7. Dr. Moore noted that the plaintiff had an area of hypersensitivity on her right thigh. *Id.*

In support of her allegations, the plaintiff submitted an affidavit from a person named Denissa Ann Thurman who states that she is a friend of the plaintiff. Thurman aff. at ¶ 1. According to Thurman, the plaintiff visited her in October of 2004 and told her that she was kicked by a police officer. *Id.* at ¶ 2. In addition, Thurman states that she saw the bruises on the plaintiff's left side where she was kicked. *Id.*

On December 2, 2004, the plaintiff sought treatment from Dr. Jennifer Rise. Rise dep. at 6. The plaintiff complained to Dr. Rise of pain in her neck, back, and right arm. *Id.* at 7. The plaintiff also was suffering from some insomnia. *Id.* The plaintiff told Dr. Rise that she injured herself falling out of a bunk bed and being kicked by a police officer. *Id.* Based on her examination, Dr. Rise ordered the plaintiff to undergo a CT scan of her brain, a CT scan of her cervical spine, and laboratory work. *Id.* at 8. An MRI of the plaintiff's lumbar spine was not done at that time. *Id.* An MRI of the plaintiff's lumbar spine was not done until June of

2007. *Id*. at 9.

On January 23, 2008, the plaintiff sought treatment for her back from Dr. Jeffrey Wingate, an orthopaedic surgeon. Wingate dep. at 7. Dr. Wingate has performed surgery on the plaintiff's cervical back and states that he would like for the plaintiff to undergo surgery on her lumbar back. *Id*. at 14-15. Dr. Wingate attributes the plaintiff's lumbar back issues to the kicks by Officer Davidson. *Id*. at 18-19. Dr. Wingate's conclusion is based on the plaintiff's medical history as provided by the plaintiff orally as he has limited written records of the plaintiff's medical history. *Id*. at 14. The plaintiff represented to Dr. Wingate that she had never had any consistent back pain before the accident. *Id*. at 11. However, the plaintiff had prior to the accident been treated by Dr. Rise for back pain on several occasions. Rise dep. at 23-33.

## Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery
> and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an
> element essential to that party's case, and on which that
> party will bear the burden of proof at trial.  In such a
> situation, there can be "no genuine issue as to any
> material fact," since a complete failure of proof
> concerning an essential element of the nonmoving
> party's case necessarily renders all other facts
> immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment

always bears the initial responsibility of informing the court of the basis for its

motion and identifying those portions of the pleadings or filings which it believes

demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The

burden then shifts to the nonmoving party to "go beyond the pleadings and by ...

affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*

at 324 (quoting  Fed. R. Civ. P. 56(e)).  In meeting this burden the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to

the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue

for trial."  Fed. R. Civ. P.  56(e); *Matsushita*, 475 U.S. at 587.

On motions for summary judgment, the court shall construe the evidence

and factual inferences arising therefrom in the light most favorable to the

nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The

substantive law will identify which facts are material and which are irrelevant.

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).  All reasonable doubts

about the facts and all justifiable inferences are resolved in favor of the

nonmovant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A

dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."   *Anderson*, 477 U.S. at 248.  If the evidence is

merely colorable, or is not significantly probative, summary judgment may be

granted.  *Id*. at 249-50.  The basic issue before the court on a motion for summary

judgment is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law."  *Id.* at 251-252.

## Discussion

The plaintiff's amended complaint alleges that Officer Davidson is liable for

the injuries she received as a result of the force that was applied to her by Officer

Davidson (doc. 16).  Count I of the amendment complaint alleges that Officer

Davidson assaulted and battered the plaintiff.  *Id.*  Count II alleges that the

plaintiff's Fourth and Fourteenth Amendment rights were violated by Officer

Davidson's use of excessive force and by his failure to provide her with medical

10

care.

*I.  Count II: Plaintiff's Constitutional Rights Claims.*

A. Plaintiff's Fourth Amendment Claims.

The parties agree that the plaintiff was a pretrial detainee during all times
relevant to this lawsuit and that "[c]laims involving the mistreatment of . . . pretrial
detainees in custody are governed by the Fourteenth Amendment's Due Process
Clause."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); (doc. 42 at 9;
doc. 48 at 11).  Therefore, summary judgment is due to be granted on the
plaintiff's claims that her Fourth Amendment rights were violated.  Those claims
will instead be analyzed under the Due Process Clause of the Fourteenth
Amendment.

B. The Plaintiff's Fourteenth Amendment Claims.

The plaintiff alleges that her Fourteenth Amendment rights were violated by
Officer Davidson's use of excessive force and by Officer Davidson's failure to
provide adequate medical care.  As an initial matter, summary judgment is due to
be granted on the plaintiff's claim for failure to provide medical care as the
plaintiff abandoned that claim by not responding to Officer Davidson's argument
that summary judgment is due to be granted.  *See McIntyre v. Eckerd Corp.*, 251
Fed. Appx. 621, 626 (11th Cir. 2007) ("the district court did not err in concluding

11

that because McIntyre made no argument on this claim, she abandoned it").

With regard to the excessive force claim, the plaintiff asserts that genuine issues of material fact exist such that summary judgment should not be granted. Specifically, the plaintiff argues that there is a genuine issue concerning whether Officer Davidson "kicked" the plaintiff or whether Officer Davidson "nudged" the plaintiff.  The well-established law of the Eleventh Circuit Court of Appeals states that "[c]laims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  However, "it makes no difference whether [the plaintiff is] a pretrial detainee or a convicted prisoner because the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees." *Id*. (internal quotations omitted).

In determining whether the plaintiff's constitutional rights were violated by Officer Davidson's use of force, the district court must consider both a subjective component - whether the "officials act[ed] with a sufficiently culpable state of mind" - and an objective component - "whether the alleged wrongdoing was

12

objectively harmful enough to establish a constitutional violation." *Johnson v. Moody*, 206 Fed. Appx. 880, 883 (11th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Viewing the facts in the light most favorable to the plaintiff, the court must find that Officer Davidson kicked the plaintiff.  However, that is not the end of the analysis.  It is in fact just the beginning of the analysis because the court must consider 1) whether Officer Davidson kicked the plaintiff maliciously and sadistically and 2) whether the force applied was sufficiently serious to constitute a violation of the plaintiff's constitutional rights.

Under the subjective prong, force is deemed legitimate as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (quoting *Whitney v. Albers*, 475 U.S. 312, 320-21 (1986)).  Factors to be considered in assessing whether force was used sadistically and maliciously include: 1) the extent of the injury; 2) the need for application of force; 3) the relationship between the need and amount of force used; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them. *Johnson*, 206 Fed. Appx. at 883 (citing

13

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).

The court finds that when all of the evidence is considered, the only conclusion that a reasonable jury could reach is that Officer Davidson did not kick the plaintiff maliciously and sadistically.  First, it is undisputed that Davidson had never met or had any contact with the plaintiff prior to responding to her fall from the bunk bed.  Davidson dep. at 46-48, 51-57, 75-76.  Thus, there was no history between the plaintiff and Officer Davidson from which a reasonable person could infer that Officer Davidson was responding maliciously and sadistically.  *Cf. Danley v. Allyn*, 485 F.Supp.2d 1260, 1267-68 (N.D. Ala. 2007) (finding that officers acted sadistically where they used pepper spray on an inmate after the inmate was verbally abusive to the officers).

Second, Officer Davidson touched the plaintiff with his foot in an attempt to comply with Pelham City Jail policy.  Davidson dep. at 57-58.  Pelham City Jail policy requires an officer entering a jail cell alone to be constantly prepared for potential attacks and/or escapes.  Exhibit B to Thomas aff.  In addition to the written policies, male officers are instructed to refrain from touching female prisoners with their hands unless absolutely necessary.  Thomas aff. at ¶ 4.  This instruction is aimed at reducing the risk of claims of inappropriate touching by female prisoners.  *Id*.  The fact that Officer Davidson was trying to comply with

14

Pelham City Jail policy negates the plaintiff's allegation that Officer Davidson acted maliciously and sadistically.  The court finds that Officer Davidson's decision to touch the plaintiff with his foot was an entirely reasonable decision given the fact that there was another person in the cell who was not injured and that there was a policy instructing male officers to refrain from touching female prisoners with their hands.

Third, it is undisputed that as soon as the plaintiff finally responded to Officer Davidson, he made no further contact with the plaintiff.  Jaeger-Wayboer dep. at 82-83.  If Officer Davidson was "maliciously and sadistically" using force on the plaintiff for the very purpose of causing harm, he would not have stopped immediately after the plaintiff finally responded to his numerous questions.  *Cf. Bozeman*, 422 F.3d at 1271-72 (11th Cir. 2005) (finding it significant in the subjective inquiry that "[a]fter [the plaintiff] told the Officers he wished to give up and that he had had enough, one of the Officer's replied, 'Oh, we don't think you've had enough'" and continued suffocating him)*.  Furthermore, the fact that Officer Davidson made no further contact with the plaintiff after she responded indicates that his purpose for making contact with the plaintiff was to elicit information so that he could assess the situation.  In other words, Officer Davidson's purpose was not to cause harm to the plaintiff.

15

Fourth, the plaintiff's reaction to Officer Davidson's "kicks" show that Officer Davidson was not "maliciously and sadistically" kicking the plaintiff.  In her deposition, the plaintiff testified that she asked Officer Davidson "why are you putting your foot on me."  Jaeger-Wayboer dep. at 82-83.  The court finds this reaction significant because putting your foot on someone is a far different action than kicking someone.  The court would expect the plaintiff's reaction would be far different if she was "maliciously and sadistically" kicked.

Fifth, the fact that the plaintiff did not tell anyone who treated her immediately following the accident that she was kicked by Officer Davidson belies her claim that Officer Davidson used force sadistically or maliciously.  Following the plaintiff's fall, she was treated by three paramedics at the Pelham jail, a registered nurse and a doctor at the hospital, and Dr. Moore following her release from jail.  Massey aff. at ¶ 2; Moore aff. at ¶ 5; Reid aff. at ¶ 2; Simmons aff. at ¶ 2; Zekoff aff. at ¶ 2; Zito aff. at ¶ 2.  None of these six people either recall or made a notation that the plaintiff was kicked by an officer.  Massey aff. at ¶ 3; Moore at ¶ 5; Reid aff. at ¶ 3; Simmons aff. at ¶ 3; Zekoff aff. at ¶ 3; Zito aff. at ¶ 3.  However, all of these people recall and made a notation that the plaintiff was injured falling out of a bunk bed.  *Id.*  If Officer Davidson applied force in a malicious and sadistic manner, then one would reasonably expect that the plaintiff

16

would have told at least one of the people she came into contact with immediately following the incident.  This is especially true since she told all of these people that she fell out of a bunk bed.

Sixth, the extent of the injury suffered by the plaintiff shows that the force was not used sadistically or maliciously.  Specifically, the medical records show that the plaintiff did not have any bruising or tenderness in areas where she alleges that she was kicked by Officer Davidson either on the date of the incident, three days later, or several weeks later.  Zito aff. at ¶ 4; Simmons aff. at ¶ 4; Moore aff. at ¶ 6.  The only evidence that the plaintiff suffered any bruises on her left side between her hip bone and her rib cage is the affidavit of Denissa Thurman. Thurman aff. at ¶ 2.  Even assuming that Thurman's statements are credible, the bruising was not significant enough to have been noticed by any of the plaintiff's treating physicians who examined the plaintiff before and after Thurman allegedly saw the bruises.  Therefore, the court finds that whatever bruises were suffered by the plaintiff were minimal and do not show that Officer Davidson acted maliciously and sadistically.

Seventh, the fact that Officer Davidson immediately called the paramedics after the plaintiff finally responded shows that Officer Davidson's conduct was not malicious and sadistic.  It is undisputed that between the time Davidson first

17

arrived at plaintiff's cell to the time he called for the paramedics, less than five minutes elapsed.  *Compare Bozeman*, 422 F.3d at 1272-73 (finding the officer acted maliciously where they knew that the plaintiff "was unconscious and not breathing and ... then failed for fourteen minutes to check [the plaintiff's] condition, call for medical assistance, administer CPR or do anything else to help") *with Johnson,* 206 Fed. Appx. at 884 (finding that the officer did not act maliciously and sadistically where the officer immediately reported the incident and the plaintiff was escorted to the prison's treatment center less than twenty minutes after the incident).

Eighth, the fact that the plaintiff did not file a notice of claim with the City of Pelham until April 21, 2005, nearly six months after the incident, further negates the plaintiff's allegations that Officer Davidson applied force maliciously and sadistically.  If force was used maliciously and sadistically, one would have expected the plaintiff to file her claim in a much more timely manner.  The fact that the plaintiff waited six months to file the claim shows that the incident was not as egregious as claimed by the plaintiff.

The plaintiff asserts that Officer Davidson's use of force was malicious and sadistic for the following reasons: 1) Officer Davidson allowed the tape of the plaintiff's cell to be destroyed; 2) Officer Davidson was undergoing the emotional

strain of a divorce; 3) Officer Davidson had previously sprayed a prisoner with mace and no tape existed of that event either; 4) Officer Davidson was terminated shortly after the incident with the plaintiff as a result of his arrest and conviction for shooting into an occupied dwelling; and 5) Officer Davidson used derogatory words and spoke maliciously to the plaintiff (doc. 48 at 21-22).

With regard to the first reason offered by the plaintiff, the Pelham City Jail's policy is to recycle tapes after thirty days unless there is a reason to preserve the tape. Thomas aff. at ¶ 3. Officer Davidson testified that he saw nothing out of the ordinary with his interaction with the plaintiff to request that the tape be secured. Davidson dep. at 72-73. Furthermore, as explained by Pelham Police Chief E.A. Thomas, "any of the dispatchers, obviously, could have suggested and even made notation if something would have occurred significantly. They would have brought it to the duty supervisor's attention and made note of that incident. And then, at that time, the duty supervisor would have made the decision whether to pull the tape or not." Thomas dep. at 29. The dispatcher, who is the only person who viewed the tape, did not see anything on it which would indicate that it needed to be retained. Wilkinson aff. at ¶ 5. In addition, had the plaintiff alleged to anyone at the Pelham Police Department that she had been assaulted within thirty days after her incarceration, the tape of the incident would have been

19

preserved.  Thomas aff. at ¶ 3.  Contrary to the plaintiff's assertion, her inaction was the reason the tape was destroyed more so than any affirmative action by Officer Davidson to destroy the tape.

The second, third and fourth pieces of evidence are of prior and subsequent "bad acts" which would be inadmissible and, thus, cannot be considered by the court in determining whether summary judgment is due to be granted.  *See, e.g., Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir. 1999).  Federal Rule of Evidence 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."  In addition, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).

Officer Davidson's marital issues would be inadmissible because there is no similarity between the domestic issues and the plaintiff's allegations of excessive force.  Therefore, Officer Davidson's marital issues cannot be considered by this court in determining whether he acted maliciously and sadistically.

The incident involving Officer Davidson spraying an inmate is too remote and not sufficiently similar to be relevant or admissible.  The incident occurred in 1992, over twelve years prior to the events at issue in this lawsuit.  (Exh. 11 to

doc. 48).  Furthermore, the plaintiff admits that the discharge of the spray was accidental (doc. 48 at 8).  An accidental discharge that occurred over twelve years ago would not be relevant or admissible to prove whether Officer Davidson acted maliciously and sadistically.

Finally, with regard to the fourth incident, evidence that Officer Davidson was convicted of two misdemeanors would not be admissible pursuant to Federal Rule of Evidence 404(b).  In addition, these convictions would not be admissible for purposes of impeachment because only misdemeanors involving dishonesty or false statement may be admitted for purposes of impeachment.  Fed. R. Evid. 609(a).

The only evidence offered by the plaintiff indicating that Officer Davidson acted maliciously or sadistically is the statement by Officer Davidson that she was fat.  While the court deems this statement inappropriate, it is not determinative of Officer Davidson's intent.  This is especially true where all of the other evidence shows that Officer Davidson did not act maliciously or sadistically.

For the foregoing reasons the district court finds that no genuine issue of material fact exists as to whether Officer Davidson acted sadistically or maliciously.  Since the plaintiff cannot establish the subjective prong, it is unnecessary for the court to analyze the objective prong of the inquiry.  Even if the

court reached the objective prong, the injuries suffered by the plaintiff were clearly *de minimis* and not "repugnant to the conscience of mankind" as the plaintiff has only established that minimal bruising occurred.   *See Johnson*, 206 Fed. Appx. at 884-85 (quoting *Hudson*, 503 U.S. at 9-10) ("Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable unless they involve force that is repugnant to the conscience of mankind").

*II. Assault & Battery.*

Alabama Code Section 6-5-338(a) shields police officers from tort liability for *discretionary* acts performed within the line and scope of their law enforcement duties.   *Norris v. City of Montgomery*, 821 So.2d 149, 153 (Ala. 2001) (internal marks and citation omitted) (emphasis in original).   "§ 6-5-338 extend[s] discretionary-function immunity to a municipal police officer 'unless the officer's conduct is so egregious as to amount to willful or malicious conduct engaged in in bad faith."   *Ex parte City of Gadsden*, 781 So.2d 144, 153 (Ala. 2000) (quoting *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala. 1998)). Having already considered whether Officer Davidson acted maliciously or sadistically, the court incorporates the analysis above.   Since Officer Davidson did not act willfully, maliciously, or in bad faith, he is entitled to discretionary-

function immunity and summary judgment is due to be granted on the plaintiff's claims for assault and battery.

## Conclusion

Having considered the foregoing, and being of the opinion the defendant is entitled to judgment in his favor as a matter of law, it is therefore **ORDERED** by the court that the defendant's Motion for Summary Judgment is **GRANTED**, the court finding no genuine issues of material fact remain.  As the court has considered all the filings by the parties regarding the defendant's Motion for Summary Judgment, the remaining motions are found **MOOT**.  Accordingly, the pretrial conference at which the defendant's summary judgment motion was to be argued is **CANCELED**.

**DONE** and **ORDERED** this the 23rd day of April 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE